**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| ROBERT SLACK, et al., | Civil Action No.: 10-2548 (JLL) |
| Plaintiffs, | |
| v. | **OPINION** |
| SUBURBAN PROPANE PARTNERS, L.P., et al., | |
| Defendants. | |

**LINARES**, District Judge.

This matter comes before the Court by way of Defendants' motion to dismiss the Second Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). The Court has considered the submissions made in support of and in opposition to the instant motion. No oral argument was heard. Fed. R. Civ. P. 78. Based on the reasons that follow, Defendants' motion is granted in part and denied in part. Plaintiffs have thirty (30) days in which to file a Third Amended Complaint which cures the pleading deficiencies addressed herein.

## BACKGROUND

The following facts are accepted as true for purposes of the instant motion. Suburban Propane (comprised of a parent company and operating company) is a nationwide marketer and distributor of energy products including propane. (Second Am. Compl. ("Complaint or Compl."),

¶ 9).  Plaintiffs are residential customers of Suburban Propane. (Compl., ¶¶ 10-17).  Most of Suburban Propane's residential customers receive their propane supply through an automatic delivery system which schedules deliveries at dates and times of Suburban Propane's choosing. (Compl., ¶ 29).  Another feature of Suburban Propane's residential propane business is that it owns a significant portion of the storage tanks located on its customers' premises and rents these tanks to its customers. (Compl., ¶ 30).

Suburban Propane does not meaningfully disclose how its prices are determined and typically does not disclose the price that it charges, per gallon, until after it has already delivered the propane. (Compl., ¶ 32). The price is not made available to residential customers until after their tank is filled, even when customers have asked for the price ahead of time. (Id.).  As a result, Suburban Propane's residential customers are often surprised by the prices that Suburban Propane charges them for propane deliveries which frequently exceed competitors' prices and industry averages by significant amounts. (Id.).

Suburban Propane has also established a fee structure designed to inhibit the ability of its residential customers to reject propane deliveries once the cost of the delivered propane is disclosed to them. (Compl., ¶ 36).  For instance, Suburban Propane charges its residential customers significant restocking or pump out fees to return any propane that has already been delivered to them and charges them a separate fee to pick up their propane tank if they wish to return a rented tank in order to switch service to a competitor. (Id.).  Suburban does not disclose the amount of these fees at the time that it is soliciting residential customers for their business. (Id.).

The Suburban Propane company website states "When you shop at Suburban Propane, you get ... the best value!" (Compl., ¶ 37).  In addition, Suburban Propane publicly claims that its prices

are "competitive" with those charged by other companies. (Id.).  To the contrary, Suburban Propane's prices are generally higher than the prevailing market price for propane. (Id.).  When customers complain about Suburban Propane's exorbitant and arbitrary prices, Suburban Propane often times has failed to make proper price adjustments and, instead, offers deceptive and misleading explanations and excuses for the overcharges. (Id., ¶ 39).

In addition, Suburban Propane has imposed various fees, separate and apart from its propane prices, on its residential customers including but not limited to: regulatory fees, transportation fuel surcharges, tank rental fees, tank pick up fees, tank pump out fees, and restocking fees. (Id., ¶ 41).  Suburban Propane has imposed such fees on its residential customers without providing them with proper advance notice of the fees, the amount of the fees or the basis for the fees.  (Id., ¶ 42).  Some invoices contain no explanation as to the nature of such fees (Compl., ¶ 43), whereas other invoices contain a fee disclosure statement. (Id., ¶ 44).  The fee disclosure statement provides, in pertinent part:

> FEES – The invoice for this delivery may include a REG Fee, Transportation Fuel Surcharge, Emergency/Special Delivery fee and other fees, under appropriate circumstances and when not prohibited by law.  The REG fee is charged to recover regulatory compliance costs for implementing policies and procedures, employees training and equipment charges to comply with federald [sic] and state requirements.  The REG Fee is being charged instead of including it in the price per gallon of propane.  The REG Fee is not being collected on behalf of any government agency.

(Compl., ¶ 44).

Suburban Propane's Residential Customer Service Agreement does not disclose the method by which Suburban Propane calculates prices, the circumstances under which it may impose fees or

the amount of such fees. (Compl., ¶¶ 48, 56, 62, 63, 68, 73, 75, 78, 85, 86, 90, 96, 96, 100, 108, 112, 118, 123, 129, 132, 137).   Instead, the Customer Agreement contains information limited to Suburban Propane's "initial" prices and/or fees and states that such prices and/or fees are "subject to future change based upon market fluctuations and other factors," with no further explanation. (Compl., ¶ 48).  Plaintiffs reasonably expected that Suburban Propane would charge them a fair and reasonable market price for their propane. (Id., ¶¶ 59, 72, 83, 94, 101, 113, 124, 133).

The Complaint alleges that Suburban Propane has engaged in a practice of deceptively "jacking" its prices and fees for reasons that are inconsistent with market fluctuations or other legitimate business factors. (Compl., ¶ 50).  The Complaint also alleges that Suburban Propane's business practices are "fraudulent, deceptive, misleading, unconscionable and unlawful, and knowingly conceal, suppress, and omit material terms relating to Suburban Propane's prices, fees, and service." (Compl., ¶ 52).  According to the Complaint, as a result of such fraudulent and deceptive business practices, Plaintiffs have suffered ascertainable damages and losses. (Compl., ¶ 53).

In light of the foregoing, Plaintiffs commenced the instant cause of action, on behalf of themselves and all others similarly situated, in May 2010.[1]  Plaintiffs filed a First Amended Complaint in July 2010.  Defendants filed a motion to dismiss the First Amended Complaint.  On September 21, 2010, the Court granted Defendants' motion to dismiss and granted Plaintiffs' leave to file a Second Amended Complaint.  On October 18, 2010, Plaintiffs filed a Second Amended Complaint.  Defendants now move to dismiss this complaint, which contains the following claims: (1) violation of the New Jersey Propane Gas Customer Protection Act (Count One), (2) violation of

---

[1] This Court's jurisdiction is premised on 28 U.S.C. § 1332(d)(2).

Article 2, Section 305 of the Uniform Commercial Code (Count Two), (3) violation of the New

Jersey Truth-In-Consumer Contract, Warranty, and Notice Act (Count Three), (4) violation of the

New Jersey Consumer Fraud Act (Count Four), (5) violation of other states' consumer fraud acts

(Counts Five through Eight), (6) unjust enrichment (Count Nine), (7) breach of the covenant of good

faith and fair dealing (Count Ten), and (8) violation of the Fair Credit Reporting Act (Count Eleven).

Currently before the Court is a motion to dismiss the Second Amended Complaint pursuant to

Federal Rule of Civil Procedure 12(b)(6).


## LEGAL STANDARD

For a complaint to survive dismissal, it "must contain sufficient factual matter, accepted as

true, to 'state a claim to relief that is plausible on its face.' " Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949

(2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). In evaluating the sufficiency

of a complaint, a court must accept all well-pleaded factual allegations in the complaint as true and

draw all reasonable inferences in favor of the non-moving party. See Phillips v. County of

Allegheny, 515 F.3d 224, 234 (3d Cir. 2008). Additionally, in evaluating a plaintiff's claims,

generally "a court looks only to the facts alleged in the complaint and its attachments without

reference to other parts of the record." Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250,

1261 (3d Cir. 1994).

## DISCUSSION

Defendants seek dismissal of each of Plaintiffs' claims.  As a preliminary matter, the Court

notes that the parties agree that New Jersey law should apply to Plaintiffs' claims.  Accordingly no

arguments have been raised with respect to Counts Five through Eight of the Second Amended

Complaint, which contain claims, pled in the alternative, pursuant to various states' consumer fraud

laws.

**1.      New Jersey Propane Gas Customer Protection Act Claim**

Count One alleges that Suburban Propane violated the New Jersey Propane Gas Customer

Protection Act ("NJGCPA"), N.J.S.A. 52:27D-509, et seq., by, inter alia, failing to provide Plaintiffs

and other customers with a meaningful description of its charges and pricing policies for propane

services and fees associated therewith.  (Compl., ¶¶ 163-168).  Defendants move to dismiss this

claim on the basis that the NJPGCPA does not expressly or impliedly confer a private right of action.

In support of this position, Defendants rely on language from the statute itself:

> Any propane gas supplier or marketer who neglects or knowingly
> fails to comply with the requirements of this act or of the regulations
> issued thereunder shall be subject to a penalty not to exceed $1,000
> per violation, which penalty may be imposed **by the department** [of
> Community Affairs] and recovered in a civil action by a summary
> proceeding pursuant to the "Penalty Enforcement Law of 1999,"
> P.L.1999, c. 274 (C.2A:58-10 et seq.). Payment of any such penalty
> shall be remitted **to the department** [of Community Affairs]**.**

N.J.S.A. 52:27D-512 (emphasis added).  Plaintiffs do not directly address this issue.  Instead,

Plaintiffs respond by stating that "a consumer's 'clearly established legal rights' under federal or

state law – including the NJPGCPA – is actionable under New Jersey's Truth in Consumer Contract,

Warranty and Notice Act ("TCCWNA"). (Pl. Opp'n Br. at 15).  Whether Plaintiffs have stated a

claim pursuant to the TCCWNA has no direct bearing on whether Plaintiffs have stated a claim

pursuant to the NJGCPA.  The remainder of Plaintiffs' briefing on this claim is limited to addressing

various sections of the NJPGCPA which Plaintiffs maintain Defendants have violated.  Plaintiffs cite

to no legal authority whatsoever suggesting – much less demonstrating – that a private right of action under the NJPGCPA is available.

Given the language of the statute itself, which clearly states that any penalty for violation of the statute may be imposed "by the department [of Community Affairs]" and that payment of any such penalty shall be remitted "to the department [of Community Affairs]," coupled with Plaintiffs failure to provide any legal basis on which the Court may infer that a private right of action exists, expressly or otherwise, under the NJPGCPA, Plaintiffs have failed to raise their right to relief, under this particular statute, above the speculative level.  See Twombly, 550 U.S. at 545 ("Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true.").  Defendants' motion to dismiss this claim is therefore granted.  Because the addition of new factual allegations will not cure the deficiency in this claim, this claim is dismissed with prejudice.

## 2.    NJ-UCC Claim

N.J.S.A. 12A:2-305, New Jersey's codification of section 2-305 of the Uniform Commercial Code (the "U.C.C.") provides in pertinent part that, in contracts containing open price terms, "the price is a reasonable price" N.J.S.A. 12A:2-305(1), and (2) "[a] price to be fixed by the seller or by the buyer means a price for him to fix in good faith." N.J.S.A. 12A:2-305(2).  Count Two of Plaintiffs' Second Amended Complaint alleges that Suburban Propane violated sections 1 and 2 of N.J.S.A. 12A:2-305  by charging Plaintiffs commercially unreasonable prices for propane and propane-related service and equipment without their consent and in bad faith. (Compl., ¶¶ 174-77). Defendants move to dismiss this claim on the basis that Plaintiffs' failure to allege that they

complied with the notice requirements of Section 2-607 of the UCC (or N.J.S.A. 12A:2-607) bars

them from bringing claims under Section 2-305. (Def. Br. at 11).

N.J.S.A. 12A:2-607 provides that, "[w]here a tender has been accepted, the buyer must

within a reasonable time after he discovers or should have discovered any breach notify the seller

of breach or be barred from any remedy." N.J.S.A. 12A:2-607.   Comment 4 accompanying this

provision clarifies the scope of the notice requirement:

> The content of the notification need merely be sufficient to let the
> seller know that the transaction is still troublesome and must be
> watched. There is no reason to require that the notification which
> saves the buyer's rights under this section must include a clear
> statement of all the objections that will be relied on by the buyer, as
> under the section covering statements of defects upon rejection
> (Section 2-605). Nor is there reason for requiring the notification to
> be a claim for damages or of any threatened litigation or other resort
> to a remedy. The notification which saves the buyer's rights under
> this Article need only be such as informs the seller that the transaction
> is claimed to involve a breach, and thus opens the way for normal
> settlement through negotiation.

N.J.S.A. 12A:2-607(3)(a), Comment 4.   Courts in this district have held that providing notice

pursuant to this regulation is a condition precedent to filing any suit for breach of contract under

Article 2 of the U.C.C.  See, e.g.,  In re: Ford Motor Co. Ignition Switch Products Liab. Litig., 2001

WL 1266317, * 14 (D.N.J.1997) (dismissing without prejudice express warranty claims where

"[n]owhere in the pleadings do any of these particular named plaintiffs claim to have given this

required notice."); Joc, Inc. v. Exxonmobil Oil Corp.,  2010 WL 1380750, at *5 (D.N.J. April 1,

2010) ("Generalized allegations that Exxon knew that these stations were struggling financially do

not suffice as an assertion that notice of a breach of contract had been given. Plaintiffs have not

alleged in the Complaint that they notified Exxon that they believed their PMPA Agreements had

been breached as a result of the high prices or resulting financial difficulties.").

Plaintiffs response is twofold: (1) Plaintiffs maintain that they "complained to Suburban Propane about its prices," and, in doing so, complied with the notice requirement imposed by N.J.S.A. 12A:2-607(3)(a), and (2) there is no notice requirement to bring a claim for breach of the common law duty of good faith and fair dealing. As a preliminary matter, whether or not Plaintiffs have stated a claim for breach of the common law duty of good faith and fair dealing has no bearing on whether Plaintiffs have properly stated a claim for violation of N.J.S.A. 12A:2-305(2). As to the notice requirement, the Second Amended Complaint alleges that "Plaintiffs and other customers have complained about Suburban Propane's unreasonable and unauthorized prices, but Suburban Propane often has failed to make proper and complete price adjustments." (Compl., ¶ 178). Plaintiffs cite to no legal authority suggesting that such generalized complaints, with no further detail, meet the notice requirement of N.J.S.A. 12A:2-607(3)(a). To the contrary, Defendants cite to a Court of Appeals decision which suggests that such generalized complaints may be insufficient. See, e.g., Eastern Air Lines, Inc. v. McDonnell Douglas Corp., 532 F.2d 957, 976 (5th Cir. 1976) ("[T]he fact that the Code has eliminated the technical rigors of the notice requirement under the Uniform Sales Act does not require the conclusion that any expression of discontent by a buyer always satisfies section 2-607. . . . Thus, while the buyer must inform the seller that the transaction is 'still troublesome,' Comment 4 also requires that the notification 'be such as informs the seller that the transaction is claimed to involve a breach, and thus opens the way for normal settlement through negotiation.' ").

Despite the fact that buyers enjoy some degree of flexibility with respect to the form of notice

that must be given,[2] Plaintiffs do not allege that they notified Suburban Propane that they believed their Customer Service Agreements had been breached as a result of the unreasonably high prices charged in connection therewith.  Nor have Plaintiffs provided the Court with any basis on which to find that their allegations concerning generalized complaints meet the notice requirement of N.J.S.A. 12A:2-607(3)(a).  Accordingly, Defendants' motion to dismiss this claim is granted.  See, e.g., Joc, 2010 WL 1380750, at *5 (dismissing claim pursuant to N.J.S.A. 12A:2-305(2) where "Plaintiffs have not alleged in the Complaint that they notified Exxon that they believed their PMPA Agreements had been breached as a result of the high prices or resulting financial difficulties.").  To the extent the deficiencies in this claim may be cured by way of amendment, this claim is dismissed without prejudice.

### 3.    Truth-in-Consumer Contract, Warranty & Notice Act ("TCCWNA") Claim

Count Three alleges that Suburban Propane violated New Jersey's Truth-in-Consumer Contract, Warranty & Notice Act ("TCCWNA"), N.J.S.A. 56:12-15. (Compl., ¶ 188).  N.J.S.A. 56:12-15 provides that:

> No seller, lessor, creditor, lender or bailee shall in the course of his business ... enter into any written consumer contract ... which includes any provision that violates any clearly established legal right of a consumer or responsibility of a seller, lessor, creditor, lender or bailee as established by State or Federal law at the time ... the consumer contract is signed or the warranty, notice or sign is given or displayed.

N.J.S.A. 56:12-15.  A person who violates the TCCWNA is liable for a $100 civil penalty or actual

---

[2] See N.J.S.A. 12A:2-607(3)(a), Comment 4 ("[T]he rule of requiring notification is designed to defeat commercial bad faith, not to deprive a good faith consumer of his remedy.").

damages, at the election of the consumer. N.J.S.A. 56:12-17.

Defendants move to dismiss this claim on the basis that Plaintiffs have failed to identify the specific contractual provision upon which this claim is based.  Plaintiffs do not dispute this. See Compl., ¶ 185 (alleging generally that "Suburban Propane's customer contracts and notices" violated Plaintiffs' clearly established rights). Assuming the Customer Service Agreements are "consumer contracts" to which the TCCWNA applies, the Court agrees with Defendants that Plaintiffs' failure to identify which contractual provision allegedly violated a clearly established right of Plaintiffs (or responsibility of Suburban), renders this claim deficient as a matter of law.  See, e.g., Perkins v. Washington Mutual, FSB, 655 F.Supp. 2d 463, 470 (D.N.J. 2009) (dismissing TCCWNA claim where "Plaintiffs have not identified which provisions of either document allegedly violate a clearly established right of Plaintiffs or responsibility of the relevant defendants."); Shinn v. Champion Mortg. Co., Inc., 2010 WL 500410, at *8 (D.N.J. Feb. 5, 2010) (dismissing TCCWNA claim where "Plaintiffs have not identified which provisions of either document allegedly violate a clearly established right of Plaintiffs or responsibility of the relevant defendants, as provided for by law."). Defendants' motion to dismiss this claim is granted.  To the extent this claim may be cured by way of amendment, this claim is dismissed without prejudice.


4.     **Consumer Fraud Claims[3]**

The Court previously dismissed, without prejudice, Plaintiffs' New Jersey Consumer Fraud Act claim for failure to allege an "unlawful practice" within the meaning of the Act.  See N.J.S.A.

---

[3] Because the parties agree that New Jersey law applies to their claims, the Court need not assess Plaintiffs' New York, California and Pennsylvania consumer fraud claims which have been pled in the alternative.

§ 56:8-2; <u>Federico v. Home Depot</u>, 507 F.3d 188, 202 (3d Cir. 2007).  In doing so, the Court noted, in pertinent part, the following:

> Plaintiffs do not allege that Defendants charged them higher rates or fees than that agreed upon.  Based on such allegations, and without more, the Court cannot conclude that Defendants engaged in any unlawful practice.  The crux of Plaintiffs' Complaint, as currently drafted, is that: (1) Plaintiffs entered into automatic purchase agreements with Suburban Propane; (2) the agreements provided an "initial" quote of prices and/or fees with the caveat that such prices and/or fees were subject to change "based upon market fluctuations and other factors;" (3) Suburban delivered the propane to Plaintiffs as agreed upon; and (4) in doing so, Suburban charged prices and/or fees which, according to Plaintiffs, were neither "fair" nor "reasonable."
>
> "Whether a practice itself is unfair [for purposes of the New Jersey Consumer Fraud Act] is a classic jury question. However, where the claim is based on written statements, the court must make the legal determination of whether a practice can be said to be unfair in light of the written statements." <u>Hassler v. Sovereign Bank</u>, 374 Fed. Appx. 341, 344 (3d Cir. 2010) (citing <u>Rosenberg v. Wash. Mut. Bank, FA</u>, 369 N.J. Super. 456 (App. Div. 2004)).  The terms of the Customer Service Agreements between Plaintiffs and Defendants, as alleged in Plaintiffs' own Complaint, clearly provided for and explained the actions that Defendants ultimately took – namely, increasing the prices and/or fees initially quoted based upon external factors.  Pursuant to the terms of the parties' agreements, Defendants retained the right to increase the prices and/or fees associated with Plaintiffs' automatic and recurring purchase of propane without providing advance notice or a corresponding explanation to Plaintiffs.  <u>See</u> Compl., ¶ 44.  Plaintiffs' claim that Suburban Propane engaged in a practice of deceptively "jacking" its prices and fees for reasons that are inconsistent with market fluctuations or other legitimate business factors,[4] contrary to their reasonable expectations,[5] is undercut by Defendants' explicit reservation of the right to increase charges and/or fees in any amount they deem fit (based upon "market

---

[4]  (Compl., ¶ 45).

[5]  (Compl., ¶¶ 53, 64, 73, 84, 94, 104, 114).

fluctuations and other factors.") <u>Id.</u>, ¶ 44.

To the extent Plaintiffs allege that Suburban Propane affirmatively misrepresented the cost of the propane by charging them prices higher than industry averages despite stating on their website that "[w]hen you shop at Suburban Propane, you get ... the best value!" (Compl., ¶ 33) and publicly claiming that their prices are "competitive," such statements are "not statements of fact, but are merely expressions in the nature of puffery and thus are not actionable." <u>New Jersey Citizen Action v. Schering-Plough Corp.</u>, 367 N.J. Super. 8, 14 (App. Div. 2003). This is particularly so given the express terms of the parties' agreement which, according to the Complaint, give Defendants the right to set their propane prices and/or fees based on market conditions as well as "other factors." (Compl., ¶ 44).

Simply put, Plaintiffs' allegations challenge the enforceability of a contract. Without more, such allegations do not rise to the level of "substantial aggravating circumstances" to constitute an unlawful practice worthy of protection under the New Jersey Consumer Fraud Act. <u>See, e.g.</u>, <u>Suber</u>, 104 F.3d at 587; <u>Cox</u>, 647 A.2d at 462. In other words, Plaintiffs' Complaint, as currently drafted, has not "nudged" their NJCFA claim "across the line from conceivable to plausible." <u>Iqbal</u>, 129 S.Ct. at 1951 (citations omitted).

(September 21, 2010 Opinion).

The Court has closely reviewed the allegations set forth in the Second Amended Complaint in connection with this claim and finds that Plaintiffs have failed to allege any additional facts which raise their right to relief above the speculative level. In fact, a comparison of both versions of this claim reveals that it has not been amended in any meaningful way. The crux of this claim remains the same: (1) Plaintiffs entered into automatic purchase agreements with Suburban Propane; (2) the agreements provided an "initial" quote of prices and/or fees with the caveat that such prices and/or fees were subject to change "based upon market fluctuations and other factors;"[6] (3) Suburban

_____

[6] Plaintiffs attempt to reassert an argument based upon the "REG fee" charged by Defendants. The Second Amended Complaint alleges that Defendants have engaged in an unlawful practice by virtue of "falsely and deceptively characterizing certain charges as 'regulatory fees,' when in fact

delivered the propane to Plaintiffs as agreed upon; and (4) in doing so, Suburban charged prices and/or fees which, according to Plaintiffs, were neither "fair" nor "reasonable." The Court has already found that such allegations, without more, do not rise to the level of "substantial aggravating circumstances" to constitute an unlawful practice worthy of protection under the New Jersey Consumer Fraud Act.[7]   Plaintiffs did not move for reconsideration of this Court's September 21, 2010 Opinion with respect to its NJCFA claim, nor will the Court now entertain attempts to reargue the merits of such decision.

The only "new" fact which was arguably asserted in support of this claim is that  Suburban has refused to disclose its prices for propane prior to delivery, even where customers have asked for a price quote in advance (Compl., ¶¶ 32, 202(f), 253(f)).  This conclusory allegation fails to meet the Rule 8 pleading standard, much less the heightened pleading standard of Rule 9(b), and is

---

such fees were not collected on behalf of any government agency . . ." (Second Am. Compl., ¶ 198). The Amended Complaint included the same allegation. (Am. Compl., ¶ 151). Based on such bare allegation, the Court cannot draw the reasonable inference that Defendants engaged in any unlawful practice. Moreover, such allegation is undercut, at least in part, by Plaintiffs' admission that at least certain invoices provided that "The REG Fee is not being collected on behalf of any governmental agency." (Second Am. Compl., ¶ 44).  See, e.g., Hassler, 374 Fed. Appx. at 344.  Lastly, Plaintiffs do not allege that they ever believed that the REG fee was being charged on behalf of the government or that any particular Plaintiff ever inquired into the nature of the "REG" fee.  In light of the foregoing, Plaintiffs have failed to substantiate with proper factual support the claim that Defendants' decision to label one of its fees a "REG" fee when it was not, in fact, collected on behalf of any government agency, constitutes an "unlawful practice" within the meaning of the Act.

[7] See, e.g., Hassler, 374 Fed. Appx. at 344 (affirming dismissal of NJCFA claim where "[t]he terms of the Account Agreement here clearly explained the actions that Sovereign eventually undertook."); Quigley v. Esquire Deposition Servs., 409 N.J. Super. 69 (App. Div. 2009) ("We live in a capatalist society in which prices are ordinarily established by the marketplace rather than by a government agency or the courts.  Sellers of goods and services generally may charge whatever the market will bear so long as they do not engage in deceptive or other unfair sales practices.").

insufficient to state a claim under the NJCFA.[8]    To the extent Plaintiffs have also attempted to

bolster this claim by asserting that Plaintiff Farber asked a Suburban Propane driver, in the winter

of 2009-2010, to disclose the price per gallon prior to filling his tank and that the driver refused to

do so (Compl., ¶ 105), such allegation is also insufficient to state a claim under the NJCFA.  Mr.

Farber's Customer Service Agreement, which was attached to Defendants' motion and is properly

considered by the Court on the instant motion,[9] specifically states that: "Current gas price and fees

for such services as tank removal and pumpout are available for review at Suburban's Customer

Service Centers." (Ex 1, Def. Br.).  Plaintiffs do not allege that Farber attempted to obtain a quote

from Suburban's Customer Service Center but was refused.  Plaintiffs' mere dissatisfaction with a

provision by which they were required to seek such information from the Customer Service Center

as opposed to the delivery person does not amount to an unlawful business practice within the

_____

[8] See Frederico, 507 F.3d at 203 ("Without information as to when Frederico attempted to return the vehicle, whether before the closing listed on the Agreement (10 PM) or after, the grounds for and contours of the alleged unlawful practice are unclear. As with the common law fraud claim discussed above, Home Depot is not placed on notice that the particular practice complained of is nondisclosure of the fact that there is a gap between the closing time of the store (as listed in the Agreement) and the closing time of the rental department, and that late fees accrue if a customer attempts to return the vehicle between those two times. Frederico therefore failed to sufficiently allege an unlawful practice with requisite specificity.").

[9] "A document integral to or explicitly relied on in the complaint may be considered without converting the motion [to dismiss] into one for summary judgment." In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir.1997).  Here, the Second Amended Complaint makes reference to the agreement entered into by Plaintiff Farber and Suburban Propane. (Compl., ¶¶ 48, 99).  Plaintiffs do not contest the authenticity of the Customer Service Agreement submitted as Exhibit 1 to Defendant's brief. (Docket Entry No. 48-2).  Because such document is integral to Plaintiffs' NJCFA claim, to the extent such claim is now based on allegations contained in paragraph 105 of the Second Amended Complaint, the Court has considered this document in its entirety for purposes of this motion.

meaning of the Act, particularly given the express terms of the parties' agreement. See, e.g., Hassler, 374 Fed. Appx. at 344 (affirming dismissal of NJCFA claim where Plaintiff's reasonable expectation was "undercut" by an "explicit" reservation of right contained in the parties' agreement).

It is clear that the relevant Customer Service Agreements, as alleged in Plaintiffs' own words, contain the very information that Plaintiffs allege was misrepresented, suppressed, or concealed. See, e.g., Hassler v. Sovereign Bank, 644 F. Supp. 2d 509, 515 (D.N.J. 2009), aff'd, 374 Fed. Appx. 341, 344 (3d Cir. 2010).  Moreover, Plaintiffs fail to allege any specific communications with Suburban about its prices prior to delivery.[10]  Although it may be true that Suburban Propane charged Plaintiffs above-market prices, Plaintiffs' dissatisfaction is insufficient to state a claim for violation of the Consumer Fraud Act.  See, e.g., Van Holt v. Liberty Mut. Fire Ins. Co., 163 F.3d 161, 168 (3d Cir.1998) ("Mere customer dissatisfaction does not constitute consumer fraud."). Accordingly, for the reasons stated in this Court's September 21, 2010 Opinion, Plaintiffs' NJCFA claim is dismissed. Given that the Court has already afforded Plaintiffs with an opportunity to cure the pleading deficiencies in this claim and that Plaintiffs have added essentially no new facts in support of same, the Court's dismissal in this regard is with prejudice.

_____

[10] See, e.g., Quigley v. Esquire Deposition Servs., 409 N.J. Super. at 80 ('Plaintiff's amended complaint does not allege that defendant made misrepresentations to plaintiff or engaged in other deceptive practices in connection with the sale of the copies of his deposition transcript.  Indeed, as previously discussed, plaintiff does not allege that he had any communication with defendant concerning the price of the transcripts before receiving them together with the invoices."). Plaintiffs' Second Amended Complaint contains no facts to support the conclusory allegation that "[t]he price is not made available to residential customers until after their tank is filled, even when customers have asked their delivery person or their customer service center for the price in advance." (Compl., ¶ 32).

**5.     Unjust Enrichment Claim**

Count Nine of Plaintiffs' Second Amended Complaint contains a claim for unjust enrichment.  The Court previously dismissed Plaintiffs' unjust enrichment claim and, in doing so, held the following:

> To state a claim for unjust enrichment under New Jersey law, a Plaintiff must establish that the "defendant received a benefit and that retention of that benefit without payment would be unjust" and that Plaintiff "expected remuneration from the defendant at the time it performed or conferred a benefit on defendant and that the failure of remuneration enriched defendant beyond its contractual rights." VRG Corp. v. GKN Realty Corp., 135 N.J. 539, 554 (1994).
>
> Plaintiffs' Complaint alleges that: (1) Suburban Propane received a benefit from Plaintiffs in the form of payment for propane and/or propane-related services or equipment, and (2) retention of these payments by Suburban Propane would be unjust since they charged Plaintiffs "unreasonable, excessive, arbitrary, unconscionable, inflated, and/or exorbitant prices for propane without making proper and adequate price disclosures and/or without obtaining meaningful consent to such prices." (Compl., ¶¶ 196-198).  Plaintiffs' Complaint admits, however, that the parties' relationships were governed by contracts.  (Compl., ¶ 44).  Under New Jersey law, "recovery under unjust enrichment may not be had when a valid, unrescinded contract governs the rights of the parties."  Van Orman v. Am. Ins. Co., 680 F.2d 301, 310 (3d Cir. 1982).
>
> Although Plaintiffs are permitted to plead in the alternative, Plaintiffs' Complaint admits that, in exchange for the payments made by Plaintiffs, Defendants did, in fact, deliver the propane they contracted for.  (Compl., ¶¶ 31, 52, 56, 63, 71, 82, 92, 93, 102, 103, 111, 122).  Plaintiffs' Complaint fails to allege that Plaintiffs expected any additional remuneration from Defendants at the time such payments were made or that Defendants were otherwise enriched beyond their contractual rights.  See, e.g., VRG Corp., 641 A.2d at 526 (explaining that the "unjust enrichment doctrine requires that plaintiff show that it expected remuneration from the defendant at the time it performed or conferred a benefit on defendant").  Because Plaintiffs received the propane they paid for, Plaintiffs have

> failed to a state a claim for unjust enrichment which is plausible on its face. See Iqbal, 129 S. Ct. at 1949; see, e.g., In re Toshiba Am. HD DVD Marketing and Sales Practices Litig., No. 08-939, 2009 WL 2940081, at *14 (D.N.J. Sept. 11, 2009) (dismissing unjust enrichment claim where "Plaintiffs paid for HD DVD Players capable of playing HD DVDs and that is exactly what they received."). Defendants' motion to dismiss this claim is, therefore, granted. Plaintiffs' unjust enrichment claim is dismissed without prejudice.

(September 21, 2010 Opinion).

The Court has compared both versions of this claim and finds that Plaintiffs have not added any new facts to cure the pleading deficiencies previously addressed by the Court in its September 21, 2010 Opinion. In fact, Plaintiffs' unjust enrichment claim (contained in the Second Amended Complaint) appears to be nearly the same – if not identical – to the version contained in the Amended Complaint. Plaintiffs did not file a motion for reconsideration of this Court's September 21, 2010 Opinion with respect to this claim (or any), nor will the Court now revisit its decision. Plaintiffs were granted leave to amend their unjust enrichment claim. Plaintiffs have not done so. Accordingly, for the reasons set forth in the Court's September 21, 2010 Opinion, Defendants' motion to dismiss this claim is granted. Because Plaintiffs have been given an opportunity to amend this claim but have failed to do so, Plaintiffs' unjust enrichment claim is dismissed with prejudice.

**6.      Implied Covenant of Good Faith and Fair Dealing Claim**

Count Ten of Plaintiffs' Second Amended Complaint contains a claim for breach of the implied covenant of good faith and fair dealing. The Court previously dismissed Plaintiffs' implied covenant of good faith and fair dealing claim and, in doing so, explained the following:

> Under New Jersey law, all contracts include an implied covenant that the parties to the contract will act in good faith. See Sons of Thunder.

Inc. v. Borden, Inc., 148 N.J. 396, 420 (1997).   The covenant "mandates that 'neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract.' " Seidenberg v. Summit Bank, 348 N.J. Super. 243, 254 (App. Div. 2002) (quotations omitted). Warning against overly broad constructions of the covenant of good faith, the New Jersey Supreme Court held that "an allegation of bad faith or unfair dealing should not be permitted to be advanced in the abstract and absent an improper motive." Brunswick Hills Racquet Club, Inc. v. Rte. 18 Shopping Ctr. Assoc., 182 N.J. 210, 231 (2005).   Thus, proof of a party's "bad motive" or "intention" must support a claim of breach of contract grounded on an alleged breach of the implied covenant of good faith and fair dealing. See Reddy v. MedQuist, Inc., No. 06-4410, 2009 WL 250050, at *3 (D.N.J. Jan.29, 2009) (quoting Wilson v. Amerada Hess Corp., 168 N.J. 236 (2001)).

Plaintiffs' Complaint alleges that "Suburban Propane breached the covenant of good faith and fair dealing by exercising its purported discretionary price-making and fee-making authority under its residential propane contracts arbitrarily, unreasonably and/or capriciously, in bad faith, with the objective of preventing its residential propane customers from receiving their reasonably expected fruits under such contracts." (Compl., ¶ 203).  Plaintiffs' Complaint contains no facts in support of its contention that Defendants exercised their discretionary price-making and fee-making authority in bad faith.  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.' " Iqbal, 129 S.Ct. at 1949.  Without such "factual content," the Court is unable to draw the reasonable inference that Defendants had a "bad motive" in exercising their discretionary price-making authority.   Id.; see generally Wilson, 168 N.J. at 251 ("Without bad motive or intention, discretionary decisions that happen to result in economic disadvantage to the other party are of no legal significance."). Defendants' motion to dismiss this claim is, therefore, granted. Plaintiffs' implied covenant of good faith and fair dealing claim is dismissed without prejudice.

(September 21, 2010 Opinion).

Plaintiffs have amended their claim to include several conclusory statements with no factual

support, none of which need be accepted as true by the Court.   See, e.g., In re Burlington Coat

Factory Sec. Litig., 114 F.3d 1410, 1429 -1430 (3d Cir. 1997) ("In deciding a motion to dismiss, a court must take well-pleaded facts as true but need not credit a complaint's 'bald assertions' or 'legal conclusions.'). The only new facts alleged by Plaintiffs which could be construed as suggestive of bad faith are "Suburban's after-the-fact price reductions in the face of customer complaints." (Compl., ¶ 253). According to the Second Amended Complaint, "Suburban Propane engaged in a pattern and practice of false pricing, whereby it knowingly overcharged customers an inflated price that was commercially unreasonable, later offered to reduce the price as a so-called "courtesy" if customers noticed the overcharge, and pocketed the overcharge for its remaining customers." (Id.). In support of this statement, Plaintiffs quote two comments allegedly posted by Suburban customers to Plaintiff Slack's personal website voicing similar complaints concerning Suburban's alleged "after-the-fact price reductions." (Compl. at 66 n. 1). Plaintiffs also allege that Plaintiffs Moat, Keith and Susan Hughes, and Farber had similar experiences with after-the-fact price reductions. (Compl., ¶¶ 71, 81 93, 103). Defendants have not specifically addressed this new factual premise in their motion to dismiss this claim.

In Wilson, the New Jersey Supreme Court explained the following:

> Here, to give full effect to the express term, we state the test for determining whether the implied covenant of good faith and fair dealing has been breached as follows: a party exercising its right to use discretion in setting price under a contract breaches the duty of good faith and fair dealing if that party exercises its discretionary authority arbitrarily, unreasonably, or capriciously, with the objective of preventing the other party from receiving its reasonably expected fruits under the contract. Such risks clearly would be beyond the expectations of the parties at the formation of a contract when parties reasonably intend their business relationship to be mutually beneficial. They do not reasonably intend that one party would use the powers bestowed on it to destroy unilaterally the other's expectations without legitimate purpose.

Wilson v. Amerada Hess Corp., 168 N.J. 236, 251 (2001). At the very least, Plaintiffs' allegations concerning the "after-the-fact price reductions" could be construed as suggestive that Defendants have exercised their discretionary authority over its pricing arrangements in an arbitrary or unreasonable manner. See, e.g., Joc, 2010 WL 1380750, at *6 (denying motion to dismiss claim for violation of the implied covenant of good faith and fair dealing where Plaintiffs "specifically alleged that Defendant exercised its discretionary authority over DTW pricing, rental rates and other decisions arbitrarily, unreasonably, or capriciously" and noting that such terms "connote bad faith."). In light of the foregoing, the Court will allow this claim to proceed at this time. Defendants motion to dismiss this claim is denied. See generally Wilson, 168 N.J. at 253 ("[A] plaintiff must have a reasonable opportunity to obtain facts not available to it other than through formal discovery.").

### 7.    Fair Credit Reporting Act Claim

Count Eleven of Plaintiffs' Second Amended Complaint alleges that Defendants violated the Fair Credit Reporting Act by requesting and obtaining a consumer report relating to Plaintiffs Slack and Farber without their authorization or knowledge. Section 1681b(f) of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681b(f), provides that:

> A person shall not use or obtain a consumer report for any purpose unless – (1) the consumer report is obtained for a purpose for which the consumer report is authorized to be furnished under this section; and (2) the purpose is certified in accordance with section 1681e of this title by a prospective user of the report through a general or specific certification.

15 U.S.C. § 1681b(f). The Court has previously ruled on this claim as well. In doing so, the Court noted the following:

Thus, the FCRA "imposes liability for using or obtaining a consumer report in violation of the FCRA, not simply for releasing or disseminating a report." Cole v. U.S. Capital, 389 F.3d 719, 731 (7th Cir. 2004); see, e.g., Cappetta v. GC Servs. Ltd. P'ship, 654 F. Supp. 2d 453, 457 (E.D. Va. 2009) ("The FCRA allows access to a consumer's credit report only under specific circumstances where a permissible purpose exists."). Some courts have found that a plaintiff must establish three elements in order to sustain a claim of improper use or acquisition of a credit report: "(I) that there was a 'consumer report' within the meaning of the statute; (ii) that the defendant used or obtained it; and (iii) that the defendant did so without a permissible statutory purpose." Godby v. Wells Fargo Bank, N.A., 599 F.Supp. 2d 934, 938 (S.D. Ohio 2008) (citations omitted). In addition, a plaintiff must allege that he or she has sustained actual damages as a result of the statutory violation. See, e.g., Ruffin-Thompkins v. Experian Info. Solutions, Inc., 422 F.3d 603, 610 (7th Cir. 2005) (dismissing FCRA claim where plaintiff had not demonstrated "actual damages" and noting that "[t]he FCRA does not presume damages; instead, as discussed above, the consumer must affirmatively prove that she is entitled to damages.").

Plaintiffs' Complaint alleges that one day after the filing of Plaintiffs' original Complaint in this matter, Suburban Propane requested and obtained a consumer report relating to named plaintiff Robert Slack without Slack's authorization or knowledge. (Compl., ¶ 206). The Complaint further alleges that, at the time Defendants requested and obtained Slack's consumer report, Slack had already ceased doing business with Defendants, and owned no money to Defendants (Compl., ¶ 207). According to Plaintiffs, Suburban Propane did not obtain Slack's consumer report for a purpose authorized by the FCRA and that, as a result of Defendants' unauthorized request for his consumer report, Slack has suffered a reduction in his credit score. (Compl., ¶ 212).

Plaintiffs have provided no facts in support of their contention that Slack has suffered actual damages as a result of Defendants' alleged violation of the Fair Credit Reporting Act. Plaintiffs allege merely that Slack has suffered a reduction in his credit score. Such allegations, without more, fail to raise the possibility of relief above the speculative level. See, e.g., Twombly, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level."). For instance, Slack "has not alleged any actual damages that he suffered as a consumer flowing from the alleged decrease in credit score such as that he was denied credit, lost credit,

had his credit limits lowered, or was required to pay a higher interest rate for credit." <u>Young v. Harbor Mortor Works, Inc.</u>, No. 07-31, 2009 WL 187793, at *5 (N.D. Ind. Jan. 27, 2009). Absent such factual content, Plaintiffs have failed to adequately plead a claim under the Fair Credit Reporting Act. Defendants' motion to dismiss as to this claim is, therefore, granted. Plaintiffs' FCRA claim is dismissed without prejudice.

(September 21, 2010 Opinion). Plaintiffs have amended their claim to include the following statement: "Pursuant to 15 U.S.C. § 1681 n, Slack and Farber are entitled to statutory damages of $1,000 for Suburban Propane's knowing and willful violation of the FCRA, plus costs, reasonable attorneys' fees, and punitive damages as the court may allow. Slack and Farber seek this relief in lieu of actual damages, as permitted by § 1681 n of the FCRA. (Compl., ¶ 262). Thus, Plaintiffs no longer request actual damages in connection with this claim.

Defendants move to dismiss this claim on the basis that Plaintiffs have failed to "show that the information allegedly obtained by Suburban constituted a 'consumer report' within the meaning of the statute.' " (Def. Br. at 38). In support of this position, Defendants cite to an unpublished decision by a court in this district wherein the court held that: "Plaintiffs therefore must allege some facts regarding the nature of the reports that would, if true, cause them to fall within the statutory definition of 'consumer report.' " <u>Arcidiacono v. American Exp. Co.</u>, 1993 WL 94327, at *3 (D.N.J. March 29, 1993).

The FCRA prohibits the act of obtaining a consumer report unless it is obtained for a purpose for which it was authorized. 15 U.S.C. § 1681b(f). Plaintiffs' Second Amended Complaint alleges that one day after the filing of Plaintiffs' original complaint, which listed Plaintiffs Slack and Farber as named Plaintiffs, Defendants requested and obtained "consumer reports" relating to Slack and Farber without their authorization or knowledge and for no purpose authorized by the Fair Credit

Reporting Act.  In particular, the Second Amended Complaint goes on to allege that Defendants requested and obtained the foregoing "consumer reports" after Plaintiff Slack ceased doing business with Defendants and solely for "for purposes related to this litigation."  (Compl., ¶¶ 257-59).

Defendants cite to no binding legal authority which warrants dismissal of this claim at this juncture.  To the contrary, the Court finds that the types of arguments raised by Defendants in support of dismissal of this claim are better addressed once the parties have had the benefit of discovery.  For instance, Defendants argue that "because Farber owed money to Suburban at the time of his death, even if he had adequately pleaded an FCRA claim (and he has not) Suburban's purported conduct would not be actionable." Def. Br. at 38.   Certainly, the question of whether or not Suburban's alleged conduct was done for a permissible purpose is not something that the Court can determine as a matter of law based on the current record.  See, e.g., Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), abrogated on other grounds by Harlow v. Fitzgerald, 457 U.S. 800 (1982) ("The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.").  Defendants' motion to dismiss this claim is therefore denied.

## 8.    All Claims Against Suburban Propane Partners, L.P.

Lastly, Defendants move to dismiss all claims to the extent they are asserted against Defendant Suburban Propane Partners, L.P. ("SPP").  According to Defendants, "all of Plaintiffs' allegations relate to the provision of propane and related services by Suburban Propane." (Def. Br. at 39).  Thus, Defendants seek dismissal of all claims asserted against SPP, the parent holding company, on the basis that the Second Amended Complaint is devoid of any factual allegations suggesting that SPP was itself responsible for the purportedly unlawful conduct allegedly

Page 24 of  27

engaged in by its subsidiary, Suburban Propane.

The Second Amended Complaint alleges, in pertinent part, the following: SPP is directly responsible for the operations of Suburban Propane and employs an officer who is responsible for overseeing Suburban Propane's operations. (Compl., ¶ 9).  The Second Amended Complaint also alleges that SPP dominates the business affairs of Suburban Propane and in particular "approved, authorized, enabled and/or ratified" its allegedly unlawful conduct. (Compl., ¶ 9). The Second Amended Complaint offers no facts to support this conclusory allegation.

The Third Circuit has explained the following:

> When one corporation acts as the agent of a disclosed principal corporation, the latter corporation may be liable on contracts made by the agent. Unlike the alter ego/piercing the corporate veil theory, when customary agency is alleged the proponent must demonstrate a relationship between the corporations and the cause of action.

Phoenix Canada Oil Co. Ltd. v. Texaco, Inc., 842 F.2d 1466, 1477 (3d Cir. 1988) (internal citations omitted).  Under an agency theory, "the issue of liability rests on the amount of control the parent corporation exercises over the actions of the subsidiary. The parent corporation will be held liable for the activities of the subsidiary only if the parent dominates those activities." Ramirez v. STi Prepaid LLC, 644 F.Supp.2d 496, 508 (D.N.J. 2009) (quotations omitted).  That being said, "the relevant inquiry for agency liability is whether the agency relationship existed with regard to the specific transaction or transactions that gave rise to the claim. Thus, whether Case had previously authorized its European subsidiaries to act on its behalf is not relevant to whether an agency relationship existed with regard to the Golden Grain transaction." Jurimex Kommerz Transit G.M.B.H. v. Case Corp., 2007 WL 2153278, at *3 (3d Cir. July 27, 2007).

The Second Amended Complaint contains no factual allegations linking the agency relationship between SPP and Suburban Propane to Plaintiffs' claims.   The conclusory allegation that SPP "approved, authorized, enabled and/or ratified"[11] Suburban Propane's allegedly unlawful conduct does not set forth "enough facts to raise a reasonable expectation that discovery will reveal evidence of" an agency relationship. See Phillips, 515 F.3d at 234.  That being said, the Court is mindful that discovery is often times necessary to the preparation of an agency theory argument.  See, e.g., Jurimex Kommerz Transit G.M.B.H. v. Case Corp., 65 Fed. Appx. 803, 808 (3d Cir. 2003).  However, Plaintiffs have simply alleged no facts whatsoever, regarding their past dealings with the parent and/or subsidiary or otherwise, which would raise their right to relief under this theory above the speculative level.  Because the Complaint fails to adequately allege a basis for SPP's liability, all claims asserted against Suburban Propane Partners, L.P. (or "SPP") are dismissed without prejudice.

## CONCLUSION

Based on the reasons set forth above, Defendants' motion to dismiss is granted in part and denied in part.  All claims asserted against Suburban Propane Partners, L.P. are dismissed without prejudice.  The following specific claims are dismissed with prejudice: (1) New Jersey Propane Gas Customer Protection Act claim (Count One), (2) New Jersey Consumer Fraud Act claim, and (3) unjust enrichment (Count Nine).  The following claims are dismissed without prejudice: (1) N.J.S.A. 12A:2-305 (Count Two), and (2) Truth-in-Consumer Contract, Warranty & Notice Act claim (Count Three).  The following claims may proceed, as pled, at this time: (1) implied covenant of good faith

---

[11] (Compl., ¶ 9).

Page 26 of  27

and fair dealing claim (Count Ten), and (2) Fair Credit Reporting Act claim.

The Court will afford Plaintiffs with thirty (30) days in which to file a Third Amended Complaint which cures the pleading deficiencies discussed above. Plaintiffs are not, however, given leave to include new claims which have not been previously asserted or to reassert claims which have now been dismissed with prejudice.[12] By the same token, should Plaintiffs choose to file a Third Amended Complaint, and should Defendants choose to file a motion to dismiss in lieu of an Answer, Defendants may not move to dismiss those claims which the Court has now found to have been properly pled.

An appropriate Order accompanies this Opinion.


/s/ Jose L. Linares
DATE: December 22, 2010                    JOSE L. LINARES,
                                           UNITED STATES DISTRICT JUDGE

---

[12] To the extent Plaintiffs wish to add any new claims, they shall seek leave to file an appropriate motion to amend from Magistrate Judge Claire C. Cecchi.

Page 27 of 27